OPINION
{¶ 1} Appellant John Newman appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of his son to Appellee Stark County Department of Job and Family Services ("SCDJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant is the father of John Stutler, born in June 2002. On November 13, 2003, SCDJFS filed a complaint alleging John was dependent and neglected. On December 10, 2003, appellant and the child's mother stipulated to a finding of dependency, and the court ordered protective supervision by the agency. However, on March 26, 2004, following a hearing, the court awarded temporary custody of John to SCDJFS.
 {¶ 3} On January 19, 2005, SCDJFS filed a motion for permanent custody. On March 8, 2005, the date scheduled for trial, all parties appeared in court, at which time SCDJFS moved for a continuance to allow more time for appellant to complete anger management counseling. The trial was thus reset and heard on June 14, 2005. On that date, both parents failed to appear, although both of their attorneys appeared and argued on their behalf. On June 16, 2005, the trial court filed a judgment entry, with nunc pro tunc findings of fact and conclusions of law, granting permanent custody of John to SCDJFS.
 {¶ 4} Appellant filed a notice of appeal on July 12, 2005. He herein raises the following two Assignments of Error:
 {¶ 5} "I. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PUT FORTH GOOD FAITH AND DILIGENT EFFORTS TO REHABILITATE THE FAMILY SITUATION.
 {¶ 6} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I. {¶ 7} In his First Assignment of Error, appellant argues the trial court erred in determining the agency made reasonable efforts to remedy the concerns about the family's situation. We disagree.
 {¶ 8} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 9} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 10} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 11} "(b) The child is abandoned.
 {¶ 12} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 13} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 14} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C. 2151.414(E)(1); In re Bender, Stark App. No. 2004CA00015, 2004-Ohio-2268.[1]
 {¶ 15} In the case sub judice, the case plan elements required appellant to (1) undergo a psychological evaluation and follow the corresponding recommendations; (2) attend counseling at NOVA Behavioral Health Services; (3) attend anger management counseling; (4) submit to an evaluation and complete any recommended substance abuse treatment; (5) submit to any requested urinalysis, and; (6) complete the Goodwill parenting program.
 {¶ 16} According to the testimony of ongoing caseworker LaShawn Hye, appellant completed his psychological evaluation, but failed to follow through with the concomitant recommendations, which included anger management counseling and refraining from substance abuse. Tr. at 13. Hye's testimony further indicated appellant first attempted Melymbrosia/Voyager anger management classes in October 2004, but he left the class when he found out it would be led by a woman. Tr. at 26-27. Appellant thereafter took a hiatus from any anger management classes until March 2005, claiming a work conflict. After completing his intake assessment, appellant was moved to a class which started after his work hours. Tr. at 15. However, he then failed to show for three straight classes and was discharged for non-attendance. Despite a three-month continuance granted by the court in March 2005 (see recitation of facts, supra), appellant never completed anger management.
 {¶ 17} In regard to his NOVA behavioral health services case plan requirement, appellant was supposed to attend on a weekly basis. However, at the time of the permanent custody trial, appellant had not attended NOVA meetings for more than two months and had also been terminated from the program. This was in addition to an earlier non-compliance termination in December 2004. Tr. at 19-20.
 {¶ 18} The record also reveals that appellant completed his substance abuse evaluation at Quest Services; however, he failed to follow through with his treatment, which included an additional NOVA referral due to the ongoing anger management problem. Appellant also failed to submit to a random urinalysis requested by Hye. Appellant further relapsed and used drugs in late 2004. Tr. at 35.
 {¶ 19} Appellant completed Goodwill Parenting, but the instructor had serious concerns about appellant's lack of control of his anger. Appellant was dismissed from two sessions due to his abrupt anger explosions, one of which included him screaming obscenities as he walked down the hall after leaving the class. Tr. at 16-17. Despite appellant's ongoing tactics of yelling and bullying behavior with social service providers, including using a racial slur against Hye, and the fact that SCDJFS management was forced to remove two prior caseworkers from appellant's case due to concerns about their safety, Hye continued to try to work with appellant and schedule supervised visits with John. Nonetheless, from October until mid-December 2004, appellant stopped communicating with Hye, despite the caseworker's telephone and written requests to meet. The agency had again been unable to contact appellant from April 25, 2005 onward. Tr. at 31.
 {¶ 20} Upon a review of the evidence in light of the above statutory factors, we find the record contains clear and convincing evidence to support the trial court's determination under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E).
 {¶ 21} Appellant's First Assignment of Error is overruled.
 II. {¶ 22} In his Second Assignment of Error, appellant argues the trial court erred in concluding that a grant of permanent custody to SCDJFS was in John's best interest. We disagree.
 {¶ 23} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} At the time of the trial in the case sub judice, appellant had not participated in a visit for nearly two months. Tr. at 50. We note Hye described the visits which did go forward as positive, with "[l]ots of hugs and kisses." Tr. at 52. Hye opined that a bond existed between appellant and John. Id. However, Hye added: "That's one thing in a controlled setting to be able to demonstrate appropriate visitation and play and do all that he was doing but its another thing to parent on a consistent basis and be able to control those times when the kids do prick those emotions and given the fact that he has not been able to demonstrate that per the time of pick up was because he was using excessive discipline." Tr. at 52. Hye also noted his observation that John showed no separation anxiety when his visits ended. Tr. at 54. Hye also expressed his concern that appellant's pattern of angered responses placed the child at continued risk, and that the harm caused by disrupting the father-son bond was outweighed by the benefits John would receive through permanency. Tr. at 53.
 {¶ 30} At the time of trial, SCDJFS was waiting for the results of an interstate home study pertaining to the child's grandfather. However, the present placement was a foster-to-adopt setting. Tr. at 56. The guardian-ad-litem testified that the child was thriving in this placement. Tr. at 59. She indicated that she had had no contact from any paternal relatives concerning the child. Id. She recommended permanent custody be granted in the child's best interest. Id.
 {¶ 31} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. In addition, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In reAwkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424. Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller (1988), 37 Ohio St.3d 71, 75,523 N.E.2d 846.
 {¶ 32} In the case sub judice, upon review of the record and the findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of John to SCDJFS was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion.
 {¶ 33} Appellant's Second Assignment of Error is overruled.
 {¶ 34} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
Boggins, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
[1] The trial court in the case sub judice did not make any finding of fact indicating it was removing the requirement of reasonable efforts by the agency, although it did make reference in its conclusions of law to the "twelve of twenty-two" rule of R.C. 2151.414(B)(1)(d).